[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: (PLAINTIFF'S) MOTION TO MODIFY SUPPORT (dated April 26, 2001
The parties prepared and signed a written Divorce Agreement dated February 15, 2001. The parties each appeared pro se, and the dissolution of marriage judgment was entered on that date. The Divorce Agreement was incorporated by reference as part of said judgment. The Divorce Agreement indicates in part that the primary residence of the three minor children (then ages 9, 5 1) would be with plaintiff mother at 56 Brookview Avenue, Waterbury, Connecticut i.e. the single-family marital residence of the parties. (Title to said premises was held by defendant and his CT Page 15333 mother.)
The divorce agreement further indicates in part: "As to division of property: already resolved — plaintiff remains at 56 Brookview Ave. . . . As to division of debts: Defendant will be responsible for payoff of debts."
The parties agree that Defendant's wages have increased since February 15, 2001, as he has changed employers, and that a medical insurance premium is no longer being deducted from defendant's wages. Therefore plaintiff seeks an increase of the existing support order.
Defendant claims that any such increase should be offset by a deviation to the Child Support Guideline amount due to the plaintiff allegedly causing an increase in the amount of joint marital debt to be paid for by Defendant (per said Divorce Agreement). Defendant further claims that Plaintiff should be working full-time, as he would assist with daycare on some evenings.
This court finds (upon hearing approximately four hours of testimony and argument):
1. Both parties knew on February 15, 2001, of the pending mortgage foreclosure.
2. Plaintiff knew on February 15, 2001, of Defendant's ongoing efforts to sell the marital premises, which efforts had commenced several months before the dissolution action was filed.
3. Plaintiff knew or should have known that the foreclosure action would be avoided only by the sale of the marital premises.
4. Plaintiff knew that she would need to vacate the marital premises upon reasonable notice of sale. However, there is no evidence that on February 15, 2001, the plaintiff was aware of the pending contract to sell (signed by buyer on February 15, 2001 and by sellers on February 20, 2001). It is possible that the defendant intentionally kept this information from Plaintiff, though this point was not pressed at this hearing.
5. It was unreasonable for Defendant to expect Plaintiff to vacate the marital premises within forty days of notice, given her limited financial assets (as reflected on her Financial Affidavit dated February 15, 2001), her welfare recipient status, and the need to find suitable (and possibly subsidized) housing for three young children. CT Page 15334
6. Both parties acknowledge that the actual amount of martial debts assumed by Defendant on February 15, 2001, was approximately $15,000 (rather than the $6,547 total reflected on Defendant's Financial Affidavit dated February 15, 2001).
7. Defendant's Financial Affidavit dated October 18, 2001, claims debts related to the marriage totaling $37,658, including $20,000 owed to Maria Belzil, the Defendant's mother. However, upon questioning by this Court, Defendant acknowledged that about $17,000 of said $20,000 debt was for costs associated with Defendant's new home in Oakville.
8. Substantially all additional, incidental or consequential expenses incurred by either party since February 15, 2001, in this matter were a result of the failure of both parties to prepare a more detailed, all-inclusive written divorce agreement.
9. The Defendant's gross income (as reflected on Plaintiff's Child Support Guidelines Worksheets submitted November 1, 2001) is $587.00.
10. The Defendant's share of the total current support obligation is $200 if Plaintiff has no income, and is $197 if Plaintiff is charged with working 40 hours per week at $6.40 per hour (as reflected on the said worksheets submitted by Plaintiff).
11. If Plaintiff's earning capacity is assumed to be $10 per hour, resulting child support share of the Defendant would be approximately $199. If Plaintiff's earning capacity is assumed to be the same as Defendant's ($587 gross), the Defendant's child support share only would be reduced to $177 per week approximate, but his out-of-pocket daycare costs would likely increase. Defendant's proposal that Plaintiff work around his schedule so as to allow a reduction in daycare expenses is impractical at best.
Accordingly, the Plaintiff's Motion to Modify is granted, with the current child support order hereby increased to $197 per week. Said modification is effective July 20, 2001, i.e., the date of Defendant's first full week's check at his new employer.
BY THE COURT,
JOHN E. COLELLA Family Support Magistrate